# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANET HICKEY, | ) |
|       Plaintiff, | ) No. 12 CV 4180 |
| v. | ) Magistrate Judge Young B. Kim |
| TARGET CORPORATION, | ) |
|       Defendant. | ) April 1, 2014 |

## MEMORANDUM OPINION and ORDER

Before the court is the motion of Defendant Target Corporation ("Target") for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons the motion is granted in part and denied in part:

## Background

Janet Hickey filed a complaint in state court against Target in April 2012 alleging that Target's negligence caused her to slip and fall in one of its retail stores. (R. 1, Ex. A, Compl.) Target removed the case to federal court in May 2012 on the basis of diversity, (id.), and the parties then consented to this court's jurisdiction, (R. 16). Both sides have completed non-medical fact discovery, and Target filed the current motion for summary judgment on November 13, 2013. (R. 54.) Hickey filed her response on February 27, 2014, (R. 70), and Target filed its reply on March 13, 2014, (R. 76).

## Facts[1]

On May 1, 2010, Hickey and her husband, William Hickey ("William"), went to the Target store located at 1154 South Clark Street in Chicago, Illinois ("the store"), to shop. (R. 55, Def.'s Facts ¶¶ 5-6.) When the Hickeys approached a checkout lane to pay for their purchases, Hickey entered the lane ahead of William and placed their items on the checkout counter. (Id. ¶ 8.) While they were waiting in line, the cashier, Jaynell Richardson, informed the Hickeys that she could not process their purchases because she was experiencing problems with her register. (R. 71, Pl.'s Facts ¶ 11.) She motioned for the Hickeys to switch over to the adjacent checkout lane on their right. (R. 55, Def.'s Facts ¶¶ 8, 10 & Ex. C; R. 71, Pl.'s Facts ¶ 10.)

The Hickeys were still standing in their original checkout lane when Guadalupe Tovar, another Target employee, entered the lane from the end opposite from where the Hickeys entered. (R. 55, Def.'s Facts ¶ 13.) Although neither party knows exactly when or how it got there, (id., Ex. A at 33:3-12 & Ex. D at 25:4-6, 26:4-6), there was a puddle of spilled laundry detergent on the floor near the checkout lane "endcap," which is a product stand located at the end of an aisle, (id. ¶¶ 15-16). This endcap displayed shelves of laundry detergent bottles between the Hickeys' lane and the neighboring lane Richardson directed them to enter. (Id.

---

[1] These facts are undisputed unless otherwise indicated. Target's Local Rule ("LR") 56.1(a) Statement of Material Facts is cited as "Def.'s Facts ¶ __." Hickey's Response to Target's LR 56.1(a) Statement of Facts is cited as "Pl.'s Fact Resp. ¶ __." Hickey's LR 56.1(b)(3)(C) Statement of Additional Material Facts is cited as "Pl.'s Facts ¶ __." Target's Response to Hickey's Statement of Additional Material Facts is cited as "Def.'s Fact Resp. ¶ __."

2

¶¶ 15, 21.) Tovar passed the Hickeys as she walked through the lane, (id., Ex. C), and upon reaching the endcap, stopped immediately to guard the spill by standing with her back to the spilled detergent and facing the sales floor. (R. 71, Pl.'s Facts ¶ 9; R. 55, Def.'s Facts ¶ 19.)

Meanwhile the Hickeys had begun moving out of their lane to get to the neighboring checkout aisle. (R. 55, Def.'s Facts ¶ 19.) William walked in front of Hickey to the area where Tovar was standing. (Id. ¶ 21.) William took a wider left turn walking between the endcap and Tovar and did not step in the spill, but Hickey took a sharper turn around the endcap than William, slipped in the detergent, and fell. (R. 71, Pl.'s Facts ¶ 12.) Hickey testified that she felt pain in her right knee, left elbow, and right wrist immediately after the fall, (R. 55, Def.'s Facts, Ex. A at 48:17-49:4), and that she later experienced neck pain in the weeks following the accident, (id. at 50:20-51:18).

The store's security video system captured the fall, along with portions of time before and after it happened.[2] (R. 55, Def.'s Facts ¶ 9 & Ex. C.) According to the video, approximately 10 seconds elapsed between when Richardson asked the Hickeys to move to the next lane and when Hickey fell. (Id., Ex. C.) Tovar also

---

[2] Although Hickey asserts that the video does not show the occurrence in real time, in violation of Local Rule 56.1(b)(3)(C) she has failed to submit any evidence supporting this claim aside from statements made by her attorney. (R. 71, Pl.'s Facts ¶ 19). As such, this court disregards her assertion. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

3

walked through the aisle and stopped at the spill site during the same 10-second period. (Id.)

The Hickeys testified that when they first entered the checkout lane, they did not see any spilled detergent or bottles on the floor. (R. 55, Def.'s Facts ¶ 25, Ex. A at 32:3-7 & Ex. B at 18:7-19:14.) Starla Nesbitt, another Target employee, testified that she saw a bottle of detergent on the floor with a broken cap when she arrived at the scene just after Hickey fell. (R. 72, Pl.'s Fact Resp., Ex. F at 43:14-16.) The spilled detergent was clear or very light in color, which made it difficult to see. (R. 71, Pl.'s Facts ¶ 15.) A photograph taken of the endcap after Hickey's fall shows that the bottom shelf was not equipped with a silver railing used to keep products on the shelf. (R. 71, Pl.'s Facts ¶ 32 & Ex. J.)

Target's policies and procedures require employees to guard a spill, stay with it once discovered, and warn customers of the spill. (Id. ¶¶ 5, 25.) It is undisputed that Tovar did not warn Hickey in the time that elapsed between Tovar's arrival at the spill and when Hickey slipped and fell. (Id. ¶ 31.) Tovar testified that she did not expect anyone to approach the spill from behind her from the checkout lane, but stated she knew that customers sometimes move from one checkout lane to another. (R. 71, Pl.'s Facts, Ex. D at 44:8-45:25.) The parties disagree about whether Tovar used her walkie-talkie to call for clean-up assistance upon reaching the spill. (R. 71 Pl.'s Facts ¶ 26; R. 55 Def.'s Facts ¶ 15.)

4

## Analysis

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Target bears the initial burden of demonstrating that there is no genuine dispute of material fact. *See Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). If Target meets this burden, Hickey "may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing there is a genuine issue for trial.'" *See Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1112-13 (7th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)).

In reviewing Target's motion for summary judgment, this court draws all reasonable inferences from the evidence in the light most favorable to Hickey, the nonmoving party. *See Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 456 (7th Cir. 2010). Summary judgment is not "a vehicle for resolving factual disputes." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). This court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for the factfinder." *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Rather, this court must examine the admissible evidence to decide whether there is any material dispute of fact that requires a trial. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010).

This court applies federal procedural law and Illinois substantive law. *See, e.g., Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010). To prevail on an ordinary negligence claim under Illinois law, a plaintiff must prove that: (1) the defendant owed a duty of reasonable care to the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *Galbreath v. Wal-Mart Stores, Inc.*, No. 10-2065, 2011 WL 1560669, at *4-5 (C.D. Ill. Apr. 25, 2011). The Illinois Premises Liability Act, 740 ILCS 130/2 (1995), provides that "[t]he duty owed [invitees] is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." Where a business invitee is injured by slipping on a foreign substance, the defendant business may be liable if the substance was placed on the premises by the negligence of the proprietor or its agents. *Olinger v. Great Atl. & Pac. Tea Co.*, 173 N.E.2d 443, 445 (Ill. 1961).

If the substance was on the premises through acts of third parties or there is no showing regarding how it got there, the business may still be liable under a premises liability theory if the proprietor or his agent knew or should have known of its presence and failed to exercise reasonable care to protect invitees against the danger. *Id.*; *see also Genaust v. Illinois Power Co.*, 343 N.E.2d 465, 472 (Ill. 1976) (citing Restatement (Second) of Torts § 343 (1965)). At the same time, landowners are not the insurers of their invitees' safety. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1069 (Ill. 2006).

6

Neither party disputes that Target owed Hickey a duty to exercise reasonable care to see that the store was reasonably safe. *See* 740 ILCS 130/2. Hickey alleges that Target breached this duty under both ordinary negligence and premises liability theories. (R. 1, Ex. A, Compl. ¶¶ 3, 6-9.) Even though Hickey's response to Target's motion focuses on premises liability, (R. 70, Pl.'s Resp. at 7), because her complaint can be read to include an ordinary negligence theory, this court will also review Target's arguments with respect to that theory, *see Galbreath*, 2011 WL 1560669, at *2.

**A.  Ordinary Negligence**

Hickey alleges that Target's negligence contributed to the presence of detergent on the floor, but she does not contend that it was actually spilled by a Target employee. (R. 70, Pl.'s Resp. at 8-9.) Rather she argues that the missing silver railing on the bottom shelf of the endcap display was one of the proximate causes of the spill, and that this alone prevents summary judgment. (Id. at 9.) Yet Hickey presents no evidence indicating when or how the railing went missing, or that a detergent bottle fell and leaked because of the railing's absence. Although this court construes the facts in a light most favorable to Hickey, inferences that are only supported by speculation or conjecture will not defeat a summary judgment motion. *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). The fact that the missing railing could have been a contributing cause of the spill is also insufficient by itself to prevent summary judgment without some showing that Target was negligent for failing to ensure a railing was in place. *See Perminas v. Montgomery*

7

*Ward & Co.*, 60 Ill. 2d 469, 476 (1975) ("[l]iability must be founded on fault"); *Olinger*, 173 N.E.2d at 445. The railing's absence, without additional evidence, does not indicate negligence and is insufficient to create a question for a jury. Accordingly, Target's motion is granted as it pertains to Hickey's ordinary negligence claim.

## B. Premises Liability

Target could still be liable under a premises liability theory if it (or its employees) knew about the spill and failed to exercise reasonable care to protect Hickey from falling. *See Olinger*, 173 N.E.2d at 445. Target does not dispute that it had actual notice of the spill, but argues that under the circumstances, "there was nothing else Target or Ms. Tovar could reasonably be expected to have done to prevent what can only be described as a fluke accident occurring within a very short timeframe." (R. 56, Def.'s Mem. at 10.) Hickey contends that a factfinder should decide whether Tovar failed to properly guard the spill and whether Target had notice of the spill before Tovar reached it. (R. 70, Pl.'s Resp. at 8-10.)

This court agrees with Hickey. She argues that contrary to Target's policies and procedures, Tovar made no verbal warnings about the detergent on the floor, stood too far away from the spill, and did not guard the area from anyone approaching the spill from behind her. (Id. at 4, 8.) Target correctly notes that a company's internal guidelines or policies do not govern whether a duty is created. (R. 76, Def.'s Reply at 4-5); *see, e.g., Fillpot v. Midway Airlines, Inc.*, 261 Ill. App. 3d 237, 244 (4th Dist. 1994) (defendant's policy manual requiring that employees keep

8

walkways free of ice or snow did not create a legal duty). But Target's policies aside, when construing the facts in a light favorable to Hickey, a reasonable factfinder could determine that Tovar should have positioned or conducted herself differently to guard the spill. Tovar did not warn Hickey in the time that elapsed between Tovar's arrival at the spill and when Hickey slipped and fell. (R. 71, Pl.'s Facts ¶ 31.) There was enough space between Tovar and the spill for William to walk through without slipping. (Id. ¶ 12.) Tovar also knew that customers sometimes switch from one checkout lane to another, meaning customers could have approached the spill from behind her. (See id., Ex. D at 45:3-45:25.) Given this evidence, reasonable minds could differ as to whether Tovar's actions were sufficient to fulfill Target's duty of care, precluding summary judgment.

As for the issue of notice, Target spends much of its briefing arguing that the several seconds between when Tovar arrived at the spill and when Hickey fell did not afford Target sufficient opportunity to remedy the dangerous condition. (R. 56, Def.'s Mem. at 10-13; R. 76, Def.'s Reply at 1, 6-9.) Target bases its contention on the premise that it first obtained notice of the spill when Tovar reached the endcap, and her testimony supports this premise. (R. 55, Def.'s Facts ¶ 14 & Ex. D at 18:25-19:3.) In response, Hickey points to the video footage and the testimony of other Target employees to argue that Target had notice of the spill prior to Tovar's arrival at the site of the spill, and that Tovar was responding to an alert issued by another employee or a customer. (See R. 70, Pl.'s Resp. at 9; R. 72, Pl.'s Fact Resp. ¶¶ 14-15, 17, 24, 27.) Hickey cites to Richardson's testimony that she was "pretty sure

9

someone called [Tovar] over the walkie" and that Tovar "responded to the spill." (R. 55, Def.'s Facts, Ex. E at 43:17-22.) Hickey also cites to the testimony of Enrique Meta, the store manager on duty during the occurrence, who stated that the reason Tovar "went out there" was to warn people of the spill, and that Tovar "appeared to be covering the spill." (Id., Ex. H at 54:17-20, 60:14-17.)

This court agrees with Target that Richardson's and Meta's statements do not conclusively indicate that Tovar knew of the spill before she approached it, and it is unclear whether their testimony is based on personal knowledge. (See R. 75, Def.'s Fact Resp. ¶¶ 9, 24.) However, for purposes of this motion, it is unnecessary to rely on their testimony because the video footage itself casts doubt on Target's assertion that Tovar first discovered the spilled detergent when she reached the endcap. (R. 55, Def.'s Facts ¶¶ 15, 17.) The parties do not dispute that when Tovar arrived at the endcap, she stopped "instantly" to guard the spill. (R. 71, Pl.'s Facts ¶ 9.) A reasonable factfinder could conclude, based on Tovar's immediate reaction to the spill as captured in the video, that she already knew the spill was there before she arrived. This would contradict Tovar's testimony that she did not know about the spill before walking through the checkout aisle, and that no one asked her to go guard the spill. (R. 55, Def.'s Facts ¶ 14 & Ex. D at 18:25-19:3, 23:13-19.) In deciding a motion for summary judgment, this court will not choose between competing reasonable inferences or balance the relative weight of conflicting evidence. *See Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010). Whether Tovar's testimony is credible is a question for the jury.

Target maintains that even if Tovar knew there was a spill before she arrived at the endcap, her actions "would be no less reasonable." (R. 76, Def.'s Reply at 8.) But if Tovar already knew about the spill before reaching the endcap, then questions arise as to how long Target had notice of the situation, and whether Target could have taken swifter, more comprehensive action to remedy and warn of the spill's dangers. *See Ishoo v. Gen. Growth Props.*, 966 N.E.2d 1160, 1165 (Ill. App. Ct. 2012) ("[S]ufficient notice of a dangerous condition may give rise to a breach of duty by the defendants if the condition is left uncorrected."). Because Hickey submitted admissible evidence from which a reasonable jury could conclude that Tovar already knew of the spill, Hickey has identified a triable issue of material fact precluding summary judgment.

## Conclusion

For the foregoing reasons, Target's motion for summary judgment is granted in part and denied in part. The motion is granted with respect to Hickey's claim that Target's negligence caused the detergent to spill. The motion is denied as to Hickey's premises liability claims.

**ENTER:**

Young B. Kim
United States Magistrate Judge